David C. Kresin (019858)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
dck@yprklaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Yolanda Espinoza, an individual, | |
| Plaintiff, | No. |
| vs. | **COMPLAINT** |
| Maricopa County Community College District, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff Yolanda Espinoza, by and through her counsel, alleges as follows:

1. Plaintiff Yolanda Espinoza is an adult female residing in Maricopa County, Arizona, who was employed by Maricopa County Community College District ("the District") at all times relevant to this case.

2. The District is a community college district consisting of ten (10) community colleges in the Phoenix, Arizona metropolitan area and maintains its headquarters in Tempe, Maricopa County, Arizona.

3. The District is an "employer" as that term is defined by the Family and Medical Leave Act, 29 U.S.C. 29 U.S.C. §2601 *et seq.* ("the FMLA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act").

4. This action is brought pursuant to the FMLA and the Rehabilitation Act.

5. The Court has jurisdiction over this case pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. §§ 1331, 1332 and 1367.

///

///

6. The parties to this action reside in and regularly do business within Maricopa County, Arizona and venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391.

7. Espinoza began her employment with the District on approximately May 7, 2017, as Dean of Enrollment Services at the District's Glendale Community College.

8. At all relevant times, her supervisor at Glendale Community College was Monica Castaneda.

9. Throughout her employment, Espinoza performed her job competently.

10. At all relevant times, Espinoza has suffered from a disability in that she suffers from hypothyroidism, liver disease, connective tissue disease and an autoimmune disorder that cause severe pain, chronic fatigue and flare ups and significantly limit her concentration, memory, energy, cognitive function, and the functioning of her immune and endocrine systems.

11. As a result of the District's adverse treatment of Espinoza, by November 2020, she also developed significant anxiety and depression, which further substantially limits her concentration, memory, energy, and cognitive function.

12. Early in her employment, Espinoza sought and obtained a reasonable accommodation of her disability, including the ability to work from home.

13. By November 2018, however, Castaneda began showing hostility toward Espinoza and her accommodation, claiming that she was "getting quite a bit of feedback that you're not on campus with your team and working from home is not our practice at GCC."

14. Espinoza later worked directly with the college's human resources personnel to seek approval of the necessary accommodations and submitted all required forms and medical documentation.

15. In March 2019, the college's human resources personnel, Carol Garcia, notified Espinoza that she was granted the reasonable accommodation of working from

home up to four times a month and flexible scheduling, as needed, for doctor's appointments, fatigue or flare ups related to her disability.

16. Upon information and belief, when Castaneda learned of the accommodations granted to Espinoza, she became visibly upset.

17. In late May/early June 2019, Espinoza took FMLA leave for a serious health condition and submitted all forms, medical documentation, and information required by the District to obtain approval of the FMLA leave.

18. When Espinoza returned to work in person on June 11, 2019, Castaneda informed Espinoza that she could not be out of the office again, stating "it is not the GCC way." In that meeting, Castaneda was visibly upset and told Espinoza that her job was to be in the office and Castaneda would not approve any additional work from home requests, despite the accommodations already granted in March 2019. Castaneda claimed that District human resources personnel told her that it was up to the supervisor whether to approve working from home and Castaneda would not support it in the future.

19. Around the same time, the District human resources personnel, Darlene Newman, called Espinoza at home and stated that she would be seeking additional medical information at the request of Castaneda.

20. On June 17, 2019, Castaneda became so upset with Espinoza that she began crying during a phone call and ordered Espinoza to go to attend an in-person meeting at Gateway Community College instead of attending a doctor's appointment.

21. Later that day, Castaneda sent Espinoza an email, expressing frustration at Espinoza using FMLA leave, indicating that accommodations would not be made in the future because "it is not the GCC way", and accusing Espinoza of being dishonest about the work she was completing while working at home.

22. On approximately June 20, 2019, Newman called Espinoza's medical provider directly to request detailed information after Espinoza's FMLA leave and subsequent return to work had already been approved. Espinoza's return to work

certification and approval to work remotely previously had been completed and became effectively on approximately June 3, 2019.

23.  On June 20, 2019, Espinoza received a call from her medical provider's office indicating that Newman had called the provider and asked for more information regarding Espinoza's past FMLA leave and the already approved disability-related accommodations. Newman had faxed the provider a form with specific questions to answer.  Newman did not seek or obtain permission from Espinoza for those inquiries.

24.  On approximately June 22, 2019, Castaneda told Espinoza that she could not use her allotted professional development funds because she was gone from the office too much.  Virtually all of Espinoza's absences were for disability-related or FMLA-protected reasons.

25.  At approximately the same time, Espinoza began learning from other employees that it had become public knowledge that Espinoza was out due to health reasons, despite that Espinoza had not shared that confidential medical information.

26.  Around that time, Castaneda directed Espinoza to enter her doctor's appointments on her work calendar, which was available for all District employees to see, so that Castaneda's administrative assistant could monitor Espinoza's leave usage.

27.  In response, on June 23, 2019, Espinoza sent Castaneda an email objecting to requiring Espinoza to share publicly her FMLA status and sending an article from the Society for Human Resources Management titled "6 Ways Managers Get into FMLA Trouble" regarding several related illegal practices that Espinoza pointed out had happened to her at Glendale Community College.

28.  Immediately thereafter, Castaneda's administrative assistant Jodie Byers began regularly checking in on Espinoza including asking why she was out on FMLA. It was apparent she was just conducting surveillance because whenever Espinoza asked if she needed something, the answer was no.

///

///

29. By the end of June 2019, Espinoza's administrative assistant Marlene Barrera had been called into meeting with Castaneda twice to ask about Espinoza's sick leave and whereabouts.

30. In November and December 2019, Espinoza became very sick related to her chronic health conditions and Castaneda criticized her repeatedly, claiming her absences were unacceptable because "it was not the GCC way."

31. In January 2020, Espinoza was diagnosed with influenza and pneumonia secondary to her autoimmune disorder and her medical provider advised her to stay home but she did not because of fear of worsening retaliation for not being in the office.

32. In March 2020, due to the pandemic, all of the District's employees began working remotely.

33. From March 2020 to June 2020, Espinoza successfully performed her job remotely, receiving accolades from others in management, while Castaneda sought to discredit her.

34. In July 2020, the District's Glendale Community College employees were required to begin working on site at the college part time.

35. Castaneda then took away Espinoza's accommodations.

36. In early September 2020, Espinoza needed to work from home due to her chronic illness flaring up and she was unable to adhere to the strict days on campus required by Castaneda. In response, Castaneda sent Espinoza an email about her illness and how it does not work for her and imposing retaliatory, unreasonable deadlines above and beyond the deadlines imposed by the college for all other employees.

37. On September 18, 2020, Castaneda again emailed Espinoza regarding her disability-related accommodations, acknowledging the existence of an approved flex time accommodation, but stating "exempt employees do not get flex" and "the expectation is that we are available 8-5 for meetings and college related work and that we spend time on campus with our teams."

///

38. In mid-September 2020, the college's human resources personnel for the first time claimed that Espinoza's disability-related accommodations had expired in May 2019 with no indication of why or how that had occurred.

39. Although Espinoza disputed the expiration of her accommodations, as she had throughout her employment, Espinoza attempted to provide whatever medical documentation and information was necessary to renew her accommodations.

40. By September 23, 2020, Castaneda and the college's human resources personnel refused to work with Espinoza regarding her FMLA and disability-related needs and required her to work directly with the District's human resources personnel.

41. Espinoza complied with the directive and immediately submitted her paperwork directly to District human resources personnel Sheri Klein and Judy Castellanos, in late September 2020.

42. Klein and Castellanos failed to reply promptly to Espinoza regarding the paperwork/requests, resulting in Espinoza not receiving FMLA approval for necessary leave.

43. Because the District had not provided the provisional FMLA approval, Castaneda denied Espinoza's FMLA request and forced Espinoza to take the time off as sick leave.

44. Despite Espinoza's exempt status and requested flexible schedule accommodation, Castaneda tried to force Espinoza to use leave hours (instead of adjusting her schedule) to cover medical appointments, despite that Espinoza made up the hours through flexing her schedule.

45. Castaneda also disclosed Espinoza's confidential medical information to Espinoza's colleagues with no reason to know that information.

46. Klein began questioning Espinoza's past FMLA and disability-related paperwork. Klein then disclosed Espinoza's medical condition on a group email including numerous District employees with no reason to know that confidential medical information.

47. In October 2020, Espinoza sought help to get positions under her supervision filled but Castaneda kept Espinoza from filling her staff positions and refused offers from others to help fill the positions.

48. By November 8, 2020, after Espinoza stood up for her team and herself in response to continuing retaliatory mistreatment against her that was impacting the entire team, Castaneda told Ruiz and the college human resources personnel, June Fessenden, that she was unwilling to meet with Espinoza alone anymore and that she had long wanted to record her conversations with Espinoza.

49. On November 9, 2020, Castaneda removed Espinoza from her calendar and cancelled all meetings/appointments with Espinoza with no notice or explanation to Espinoza.

50. In September, October, and November 2020, Espinoza exchanged emails with Deric Hall, an EEO Investigator for the District, regarding the District's failure to accommodate her disability and the hostile work environment she was experiencing.

51. In response, Hall asked Espinoza to meet with Glendale Community College President, Teresa Ruiz, on November 19, 2020.

52. When Espinoza met with Ruiz, rather than addressing or correcting the mistreatment by Castaneda, Ruiz perpetuated and furthered it.

53. After Espinoza explained how she was being discriminated against by Castaneda, Ruiz responded that "being treated poorly is subjective." Ruiz also defended Castaneda's frustration at Espinoza's occasional inability to be on campus due to her medical conditions, claiming that despite Espinoza's medical conditions and accommodations, there is an expectation of her being on campus and as an executive she should be on campus.

54. After Espinoza explained to Ruiz that her medical provider told her that coming to campus is not safe because of her auto immune disease, Ruiz re-emphasized her desire that Espinoza be present in person at campus.

///

55. After Espinoza explained that her relationship with Castaneda changed negatively because Espinoza was hospitalized, Ruiz rationalized that Castaneda was upset because she was not on campus rather than because she was hospitalized, which caused the absence.

56. Over and over again in that conversation, Ruiz re-emphasized her desire for Espinoza to work in person on campus and indicated Espinoza's career could be in jeopardy if she could not do so as often as desired.

57. Throughout that meeting, Espinoza continued to assert her rights and her need for disability-related accommodations including intermittent leave.

58. After that meeting, Ruiz and Castaneda excluded Espinoza from meetings, including meetings with Espinoza's subordinates, and from personnel decisions related to employees under Espinoza's direct supervision.

59. In November 2020, Espinoza began suffering anxiety attacks and became physically ill because of the hostile work environment and denial of rights that she was experiencing from the District. Espinoza's medical provider prescribed anxiety medication at that time.

60. On December 4, 2020, the District removed Espinoza from her position and placed her on administrative leave, claiming that "an audit" of her personnel file allegedly had revealed that she may have been in jail during a period in May 2019 in which she was utilizing FMLA and/or disability-related leave and alleging that she may have forged her medical provider's signature and/or medical information.

61. Upon information and belief, no other District employees were subject to such "an audit" of their past FMLA and disability-related leave use.

62. To disprove the allegations, Espinoza was forced to disclose additional confidential medical information and documents related to the May 2019 leave period. Through counsel, Espinoza provided the confidential personal information to the District immediately.

///

63. Espinoza also arranged for her medical provider to provide additional confidential medical information and documents directly to the District related to the May 2019 allegations.

64. Despite that Espinoza proved that the allegations were meritless, the District kept her on administrative leave until at least late April 2021 with no cause.

65. The unjustified, extended leave not only resulted in the compelled disclosure of her confidential medical information but also significantly harmed her career and professional standing.

66. Throughout her employment, Espinoza continued to diligently provide all information and documentation necessary to support her requests for disability-related accommodations and medical leaves.

67. Although the District continued to refuse to accommodate Espinoza's disability by allowing her to periodically work remotely and utilize flexible scheduling and retaliated against her for asserting her rights, on March 3, 2021, Ruiz publicly stated that Glendale Community College had learned much about working remotely and providing virtual student services and that the college would remain a hybrid campus with employees working both on campus and remotely, indefinitely.

68. Until April 2021, Espinoza repeatedly requested to have her accommodations reinstated or otherwise to receive reasonable accommodations to her disability, but the District refused.

69. Instead, the District through Castaneda engaged in a pattern of discriminatory and/or retaliatory conduct toward Espinoza, including reprimanding her by email for seeking to work from home, denying professional development opportunities, denying necessary assistance to do her job, cancelling meetings to avoid speaking with her, excluding her from meetings with her team, removing her from personnel management responsibilities and related human resources conversations regarding her own subordinates without input or notice, and auditing her personnel file to look for possible grounds for discipline.

70. When Espinoza proposed job modifications and/or a transfer to a known equivalent, vacant position, the District offered only a demotion.

71. On April 12, 2021, Espinoza filed a charge of discrimination with the EEOC, alleging among other things the failure to provide a reasonable accommodation.

72. Since receiving notice of that charge, the District has transferred Espinoza to an equivalent, vacant position at the District's Scottsdale Community College.

73. Nevertheless, during the preceding years while under Castaneda's supervision, Castaneda regularly expressed hostility toward Espinoza's assertion of her disability-related rights and her rights under the FMLA.

74. Through the conduct outlined above, the District subjected Espinoza to a hostile work environment.

75. On April 20, 2021, Espinoza submitted her request to the EEOC for a notice of right to sue related to the ADA claims.

76. The EEOC has forwarded the request to issue the right-to-sue notice to the United States Department of Justice, who is responsible for issuing right-to-sue notices for claims against local government entities such as the District.

77. Upon receipt of the right-to-sue notice, Espinoza intends to amend the complaint to include her claims under the ADA.

78. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT ONE**
**(Interference with Rights under the FMLA)**

79. Espinoza incorporates all previous allegations as though set forth fully herein.

80. At all relevant times, the District was an employer subject to the FMLA.

///

81. At all relevant times, Espinoza was an eligible employee within the meaning of the FMLA.

82. At various times, the District through Castaneda forced Espinoza to use FMLA leave against her will for medical appointments when she had been approved to flex her schedule to cover the appointment and worked additional hours to make up for the appointments.

83. At other time, the District denied Espinoza's requested FMLA leave arbitrarily or created additional impediments to keep Espinoza from exercising her rights.

84. Espinoza complied with all legal requirements necessary to be entitled to take leave under the FMLA.

85. To the extent that the District forced Espinoza to take leave when it was unnecessary, failed to provide protected FMLA leave when necessary, or failed to treat Espinoza's leave as protected FMLA leave, the District interfered with Espinoza's rights under the FMLA.

86. The District further interfered with Espinoza's rights under the FMLA by engaging in the adverse employment actions outlined above including among other things denying her certain employment opportunities and benefits and subjecting Espinoza to a hostile work environment.

87. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT TWO**
**(Discrimination in violation of the FMLA)**

88. Espinoza incorporates all previous allegations as though set forth fully herein.

89. The District discriminated against Espinoza because she exercised her right to continue to take FMLA-protected leave, by among other things creating

artificial impediments to further exercise of legal rights, refusing to engage in the interactive process with Espinoza, denying Espinoza's requested reasonable accommodations, otherwise failing to accommodate Espinoza's disability, forcing her to take medical leave, denying Espinoza certain employment opportunities and benefits, subjecting Espinoza to a hostile work environment, subjecting Espinoza to the administrative leave/investigation, and by otherwise subjecting Espinoza to differing terms and conditions of employment.

90. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT THREE**
**(Failure to Accommodate in violation of the Rehabilitation Act)**

91. Espinoza incorporates by reference all previous allegations as though set forth fully herein.

92. The District is subject to the requirements and strictures of the Rehabilitation Act pursuant to 29 U.S.C. § 794.

93. At all relevant times, Espinoza has been an individual with a disability under the Rehabilitation Act in that she has suffered from a physical or mental impairment that substantially limits one or more of her major life activities.

94. At all times during her employment with the District, Espinoza has been a qualified individual under the Rehabilitation Act in that she could perform the essential functions of her job with or without a reasonable accommodation.

95. At all relevant times, the District knew that Espinoza was an individual with a disability.

96. Espinoza requested reasonable accommodations that were not an undue hardship to the District.

97. The District failed to provide Espinoza with reasonable accommodations of her disabilities.

98. The District discriminated against Espinoza in violation of the Rehabilitation Act by creating artificial impediments to further exercise of legal rights, denying Espinoza reasonable accommodations of her disabilities, failing to engage in the interactive process, subjecting her to improper medical examinations and inquiries, and refusing to allow Espinoza to work with her accommodations.

99. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT FOUR**
**(Disability Discrimination in violation of the Rehabilitation Act)**

100. Espinoza incorporates by reference all previous allegations as though set forth fully herein.

101. The District discriminated against Espinoza due to her disability in violation of the Rehabilitation Act by among other things creating artificial impediments to further exercise of legal rights, refusing to engage in the interactive process with Espinoza, denying Espinoza's requested reasonable accommodations, otherwise failing to accommodate Espinoza's disability, forcing her to take medical leave, denying Espinoza certain employment opportunities and benefits, subjecting Espinoza to a hostile work environment, subjecting Espinoza to the administrative leave/investigation, and by otherwise subjecting Espinoza to differing terms and conditions of employment.

102. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT FIVE**
**(Retaliation in violation of the Rehabilitation Act)**

103. Espinoza incorporates by reference all previous allegations as though set forth fully herein.

///

104. On behalf of the District, Castaneda and others retaliated against Espinoza in violation of the Rehabilitation Act by among other things creating artificial impediments to further exercise of legal rights, refusing to engage in the interactive process with Espinoza, denying Espinoza's requested reasonable accommodations, otherwise failing to accommodate Espinoza's disability, forcing her to take medical leave, denying Espinoza certain employment opportunities and benefits, subjecting Espinoza to a hostile work environment, subjecting Espinoza to the administrative leave/investigation, and by otherwise subjecting Espinoza to differing terms and conditions of employment.

105. The District engaged in the above conduct in retaliation for Espinoza seeking reasonable accommodations and otherwise asserting her disability-related rights under the Rehabilitation Act.

106. As a result of the District's conduct, Espinoza has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

107. Espinoza demands a jury trial on all claims and issues set forth herein.

108. Espinoza is entitled to recover her attorneys' fees under the above claims.

WHEREFORE, Plaintiff Yolanda Espinoza prays for judgment against Defendant Maricopa County Community College District as follows:

A. For an award of economic damages in an amount sufficient to make Espinoza whole for past and future lost income and benefits and other economic losses suffered by Espinoza resulting from the District's conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Espinoza as a result of the District's conduct;

C. For an award of attorneys' fees and related expenses;

1     D.     For an award of prejudgment and post-judgment interest;

2     E.     For an award of Espinoza's costs of suit incurred herein; and,

3     F.     For an award of such other relief as the Court may deem just and proper.

DATED this 11th day of June 2021.

YEN PILCH ROBAINA & KRESIN PLC

By /s/David C. Kresin
David C. Kresin
Attorneys for Plaintiff Yolanda Espinoza

- 15 -